**Affirmed in part and Reversed and Remanded in part, and Opinion Filed December 30, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00661-CV**

**BioTE MEDICAL, LLC, Appellant**
**V.**
**LARRY MEDCALF, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-07410**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne,[1] and Partida-Kipness
Per Curiam

BioTE Medical, LLC, appeals the trial court's order granting no-evidence summary judgment in favor of Larry Medcalf. It raises one issue arguing the trial court erred because it raised more than a scintilla of evidence on each challenged

---

[1] Justice Leslie Osborne was a member of the member of the panel and participated in the oral argument of this appeal. After argument, she resigned from this Court. Justice Osborne did not participate in the decision of this case. TEX. R. APP. P. 41.1(b).

element of its claims.[2]  However, that single appellate issue encompasses numerous arguments.  We construe BioTE's arguments as follows:

(1)     contract claim—breach of contract (count 1);

(2)     tort claims—breach of fiduciary duty (count 2), misappropriation of corporate opportunities (count 2), tortious interference with existing contracts (count 3), unfair competition by common law misappropriation, unfair competition by trade-secret misappropriation, or both (count 10), and conversion (count 11);

(3)     statutory claims—violations of the Texas Theft Liability Act (count 6) and misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (count 9);

(4)     derivative claims—conspiracy to solicit others to breach a fiduciary duty (count 2), conspiracy to solicit others to misappropriate corporate opportunities (count 2), conspiracy to commit unfair competition by common law misappropriation (count 4), civil conspiracy (count 5), conspiracy to violate the Texas Theft Liability Act (count 13), and aiding and abetting breach of fiduciary duty (count 8);

(5)     declaratory judgment action (count 7); and

(6)     equitable remedies—constructive trust (count 14) and accounting (count 14).

---

[2]  BioTE argues, in the alternative, that even if we were to treat Medcalf's motion as one seeking traditional summary judgment, genuine issues of material fact exist that preclude summary judgment. Medcalf responds that, although the motion alleges no-evidence grounds for summary judgment, he attached evidence to demonstrate that the general elements of BioTE's claims could not be established as a matter of law.  The motion's title does not specify whether it is based on traditional grounds, no-evidence grounds, or both.  However, we conclude it is a no-evidence motion for summary judgment because: (1) the introduction refers to "no evidence"; (2) the second section of the motion specifically states, "This motion seeks a final judgment disposing of all claims.  As will be demonstrated herein, there is no evidence to support any of BioTE's legal claims."; and (3) the argument points out the elements of various causes of action for which there is no evidence and does not argue there is no genuine issue of material fact and it was entitled to judgment as a matter of law.  Accordingly, we do not address the parties' arguments relating to traditional summary judgment.

We conclude the trial court did not err as to some of BioTE's claims but erred as to others. The trial court's order granting no-evidence summary judgment is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts and procedural background are drawn from the parties' pleadings which are contained in the clerk's record.

The Sottopelle Group, LLC, is an Arizona limited liability company that owns the Sottopelle® brand and program of bio-identical hormone replacement therapy services and products known as the Sottopelle® method. Sottopelle Texas, LLC, was formed on July 10, 2009, as a medical training company that partnered with providers to provide bio-identical hormone replacement therapy. It was owned by Gary Donovitz, M.D., and SottoPelle North America, LLC (SottoPelle NA), and it was a licensee of Sottopelle Group.

On July 22, 2010, Medcalf entered into an independent contractor agreement with SottoPelle NA that included provisions prohibiting the disclosure of confidential information, competition, and the solicitation of any employees, affiliates, or clients, as well as injunctive-relief provisions stating that any injury for breach of the contract would cause the company irreparable harm and remedies for breach would be inadequate. In addition, the independent contractor agreement stated that Medcalf's obligations under the agreement "shall inure to the benefit of

any successors and assigns of [SottoPelle NA]." Medcalf performed his services as an independent contractor in the San Antonio, Texas, metropolitan area. In addition, on October 5, 2011, Medcalf signed a nondisclosure and non-liability agreement with SottoPelle, Inc.

On February 2, 2012, SottoPelle Texas entered into a management services and license agreement with Bernice Gonzalez, M.D. The agreement was for a three-year term but provided that it would automatically renew each year once Dr. Gonzalez attained over 501 cumulative new patients.

On September 27, 2012, Sottopelle Texas changed its name to BioTE Medical, LLC. On October 24, 2012, Dr. Donovitz acquired 100% ownership of BioTE and, as part of the confidential finalized settlement agreement, BioTE was the successor and assign of SottoPelle NA and received exclusive rights to Texas, while SottoPelle NA received exclusive rights to Arizona for a three-year period. Dr. Donovitz developed the BioTE system, the business model used by the company to train providers, and it includes, among other things, patient documents as well as an algorithm for determining proper dosing of a patient.

Medcalf allegedly continued working for BioTE pursuant to his independent contractor agreement with SottoPelle NA, reporting to BioTE's officers and management and receiving payments from BioTE. Medcalf also allegedly received training from Dr. Donovitz relating to BioTE's methodology.

In October 2017, Medcalf and Dyan Warrenburg met with Dr. Gonzalez about the "BioSana proposal." On November 15, 2017, Medcalf, Dr. Gonzalez, and Warrenburg formed BioSana ID, LLC to compete with BioTE in the bio-identical hormone replacement therapy training industry. BioSana was allegedly fully operational in six months.

On January 18, 2018, Medcalf sent a pharmacy representative an email, copying Dr. Gonzalez, that stated Dr. Gonzalez was BioSana's first client and she wanted to place her first order for March 1, 2018. On March 5, 2018, an attorney sent an email, copying Dr. Gonzalez and Medcalf, with the subject line "Bernice Gonzalez, MD Sot[t]o[P]elle Contract," that advised the contract was for a period of three years, did not allow for any automatic renewal options, any renewals had to be in writing, there were no issues with Dr. Gonzalez "moving forward." The email further advised that the non-compete agreement was operative for two years from the termination of the agreement so it was not an issue unless there was a written renewal. Then, in April 2018, when BioSana was ready to commence business, Dr. Gonzalez informed BioTE that she was no longer going to use the hormone pellets provided by BioTE.

On May 31, 2018, BioTE terminated its management services and license agreement with Dr. Gonzalez. Then, on June 6, 2018, BioTE filed its original petition against Medcalf and Dr. Gonzalez asserting the following sixteen claims in thirteen counts:

(1)     breach of contract (count 1);

(2)     breach of fiduciary duty (count 2);

(3)     misappropriation of corporate opportunities[3] (count 2);

(4)     conspiracy to solicit others to breach a fiduciary duty (count 2);

(5)     conspiracy to solicit others to misappropriate corporate opportunities (count 2);

(6)     tortious interference with existing contracts (count 3);

(7)     tortious interference with prospective business relations (count 3);

(8)     conspiracy to commit unfair competition by common law misappropriation[4] (count 4);

(9)     civil conspiracy[5] (count 5) as follows:

    (a)  conspiracy to commit tortious interference with an existing contract;

    (b)  conspiracy to commit tortious interference with prospective business relations;

---

[3] In its original petition, BioTE referred to this claim as "usurpation of business opportunities." This cause of action has been variously described as "misappropriation of corporate opportunities," "breach of fiduciary duty by usurping a corporate opportunity," and "usurpation of corporate opportunities." *See generally Panda Energy Corp. v. Allstate Ins. Co.*, 91 S.W.3d 29, 31 (Tex. App.—Dallas 2002, pet. granted, judgm't vacated w.r.m.) (referring to claim as "misappropriation of corporate opportunities"); *Loy v. Harter*, 128 S.W.3d 397, 408 (Tex. App.—Texarkana 2004, pet. denied) (referring to claim as "breach of fiduciary duty by usurping a corporate opportunity"); *Reliant Hosp. Partners, LLC v. Cornerstone Healthcare Grp. Holdings, Inc.*, 374 S.W.3d 488, 501 (Tex. App.—Dallas 2012, pet. denied) (referring to claim as "usurpation of corporate opportunities"). For clarity and consistency, we will use "misappropriation of corporate business opportunities" throughout this opinion.

[4] Although BioTE did not mention "conspiracy" in the section heading for count 4, the substance of the allegations under that heading show that it is a claim for conspiracy to commit unfair competition by common law misappropriation.

[5] BioTE's civil conspiracy claim (count 5) alleged conspiracy as to several of its underlying torts, is redundant of some of its other conspiracy counts, and is based on unpleaded underlying torts. We will refer to these claims with the count and the respective alphabetical designation. For example, conspiracy to commit tortious interference with an existing contract will be referred to as count 5(a).

–6–

(c) conspiracy to commit statutory misappropriation of trade secrets under the Texas Uniform Trade Secrets Act;

(d) conspiracy to breach fiduciary duties;

(e) conspiracy to misappropriate corporate opportunities;

(f) conspiracy to commit unfair competition by common law misappropriation;

(g) conspiracy to commit violations of the Texas Theft Liability Act;

(h) conspiracy to commit conversion;

(i) conspiracy to commit false and misleading advertising;

(j) conspiracy to commit violations of state and federal licensing laws;

(k) conspiracy to commit business defamation and disparagement;

(10) violations of the Texas Theft Liability Act[6] (count 6);

(11) declaratory judgment action (count 7);

(12) aiding and abetting breach of fiduciary duty (count 8);

(13) statutory misappropriation of trade secrets under the Texas Uniform Trade Secrets Act[7] (count 9);

(14) unfair competition by common law misappropriation, unfair competition by trade-secret misappropriation, or both (count 10);

(15) conversion (count 11); and

---

[6] In its original petition, BioTE referred to this claim as "unfair competition through violations of the Texas Theft Liability Act TEX. CIV. PRAC. & REM. CODE ANN. § 134.003."

[7] In its original petition, BioTE referred to this claim as "misappropriation of trade secrets." While the heading does not clarify whether it is a common-law claim for unfair competition by trade-secret misappropriation or statutory misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, the substance of BioTE's allegations refer to the statute. Accordingly, we construe this to be a statutory claim for misappropriation of trade secrets.

(16)  conspiracy to violate the Texas Theft Liability Act[8] (count 13).

BioTE also sought actual damages, exemplary damages (count 15), disgorgement (count 12), a constructive trust (count 14), an accounting (count 14), attorney's fees (count 15), and temporary and permanent injunctions.  Attached to its petition were the independent contractor agreement between Medcalf and SottoPelle NA, the nondisclosure and non-liability agreement between Medcalf and SottoPelle, Inc., and the management services and license agreement between Dr. Gonzalez and SottoPelle NA.  On June 15, 2018, Medcalf and Dr. Gonzalez filed a joint motion to transfer venue or, in the alternative, an original answer, generally denying the allegations and asserting, among other things, the affirmative defense that BioTE lacked the capacity to pursue its breach of contract claim because it does not have a contract with Medcalf, and it is not a signatory to the contract it alleges Medcalf breached.[9]

On August 16, 2019, Medcalf and Dr. Gonzalez each filed no-evidence motions for summary judgment.  However, at some point, Dr. Gonzalez and BioTE

---

[8] In its original petition, BioTE referred to this claim as "unfair competition through violations . . . [of the] Texas Theft of Trade Secrets Act TEX. PENAL CODE 31.05."  We note that count 13 was brought under a prior version of the Texas Theft Liability Act, which included in its definition of "theft" § 31.05 of the Texas Penal Code.  *See* CIV. PRAC. & REM. § 134.002(2); PENAL § 31.05 (criminalizing theft of trade secrets).  However, Medcalf did not address this in his no-evidence motion for summary judgment, and the parties do not address this on appeal.

[9] In his answer, Medcalf refers to this as a lack of "standing" based on BioTE's alleged lack of privity of contract, which goes to capacity.  *See Obsidian Sols., LLC v. KBIDC Invs., LLC*, No. 05-19-00440-CV, 2021 WL 3276877, at *4 (Tex. App.—Dallas July 30, 2021, no pet.) (mem. op.) (noting Texas law is clear, and this Court has previously held numerous times, challenge to party's privity of contract is challenge to capacity, not standing).

reached a settlement. Medcalf sought no-evidence summary judgment on BioTE's claims for:

(1) breach of contract (count 1);

(2) breach of fiduciary duty (count 2);

(3) tortious interference with an existing contract (count 3);

(4) tortious interference with prospective business relations (count 3);

(5) unfair competition by trade-secret misappropriation (count 10); and

(6) as derivative claims that fall under the umbrella of "'unfair competition' regarding the alleged misappropriation of trade secrets":

  (a) conspiracy to commit unfair competition by common law misappropriation (count 4);

  (b) civil conspiracy (count 5(a)-(k));

  (c) violations of the Texas Theft Liability Act (count 6);

  (d) a declaratory judgment action (count 7)

  (e) aiding and abetting breach of fiduciary duty (count 8);

  (f) misappropriation of trade secrets under the Texas Unform Trade Secrets Act (count 9);

  (g) conversion (count 11);

  (h) conspiracy to violate the Texas Theft Liability Act (count 13);

  (i) the equitable remedy of a constructive trust (count 14); and

  (j) the equitable remedy of an accounting (count 14).

Medcalf did not move for no-evidence summary judgment on the following counts in BioTE's petition: misappropriation of corporate opportunities (count 2); conspiracy to solicit others to breach a fiduciary duty (count 2); conspiracy to solicit

–9–

others to misappropriate corporate opportunities (count 2); unfair competition by common law misappropriation (count 10); the equitable remedy of disgorgement (count 12); and its requests for exemplary damages (count 15) and attorney's fees (count 15).

On May 21, 2020, BioTE responded attaching, among other things, the affidavit of its chief restructuring officer. It also objected to the no-evidence motion on the basis that Medcalf failed to challenge the separate and distinct elements of the following claims and requests for equitable relief:

(1) conspiracy to commit unfair competition by common law misappropriation (count 4);

(2) civil conspiracy (count 5);

(3) violations of the Texas Theft Liability Act (count 6);

(4) declaratory judgment action (count 7);

(5) aiding and abetting breach of fiduciary duty (count 8);

(6) statutory misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (count 9);

(7) conversion (count 11);

(8) conspiracy to violate the Texas Theft Liability Act (count 13);

(9) constructive trust (count 14); and

(10) accounting (count 14).

On June 8, 2020, after a hearing, the trial judge signed a final, no-evidence motion for summary judgment that also noted the settlement between Dr. Gonzalez and BioTE.

## II. NO-EVIDENCE SUMMARY JUDGMENT

In its sole issue on appeal, BioTE argues the trial court erred when it granted Medcalf's no-evidence motion for summary judgment on its: (1) contract claim; (2) tort claims; (3) statutory claims; (4) derivative claims; (5) declaratory judgment action; and (6) equitable remedies.

### A. Standard of Review

An appellate court reviews a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). However, an appellate court may not affirm a summary judgment on grounds not expressly set out in the motion or response. *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 566 (Tex. 2016); *Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *35 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (mem. op.).

### B. Applicable Law—No-Evidence Summary Judgment

A party seeking no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the respondent's claim on which the respondent would have the burden of proof. *See* TEX. R. CIV. P. 166a(i). Rule 166a(i) requires that a no-evidence motion specifically state the element or elements for which there is no evidence. TEX. R. CIV. P. 166a(i); *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695 (Tex. 2017). A no-evidence motion that fails to specifically identify the challenged elements is fundamentally defective

–11–

and insufficient to support summary judgment as a matter of law. *Douglas v. Farmers Ins. Fed. Credit Union*, No. 05-21-00396-CV, 2022 WL 1955682, at *4 (Tex. App.—Dallas June 6, 2022, no pet.) (mem. op.).

Once the movant specifies the elements lacking evidence, the burden shifts to the respondent to raise a fact issue on the challenged elements. *See* TEX. R. CIV. P. 166a(i); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). To defeat a no-evidence motion for summary judgment, the respondent need only point out evidence that raises a fact issue on the challenged elements. TEX. R. CIV. P. 166a, cmt.—1997; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). A no-evidence challenge will be sustained when: (1) there is a complete absence of evidence of a vital fact; (2) the trial court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

Summary judgments may only be granted upon grounds expressly asserted in the summary-judgment motion; trial courts may not grant a summary judgment on grounds not presented. *Johnson*, 73 S.W.3d at 204; *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam). This is a notice requirement, intended to ensure the respondent and the trial court are notified of those claims or

elements of claims the movant is challenging. *Fitness Evolution*, 2015 WL 6750047, at *35 .

### C. *Contract Claim—Breach of Contract (count 1)*

In the first category of BioTE's issue on appeal, we address whether the trial court erred when it granted no-evidence summary judgment on BioTE's breach-of-contract claim. BioTE argues it produced more than a scintilla of evidence to prove: (1) the existence of a contract; and (2) its entitlement to a remedy in contract.

### 1. Applicable Law

A plaintiff asserting a breach-of-contract claim must prove: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

### 2. Application of the Law to the Facts

In his no-evidence motion for summary judgment, Medcalf asserted that there was no evidence of the existence of a contract between BioTE and Medcalf (element 1) or damages sustained by BioTE as a result of Medcalf's alleged breach of contract (element 4). We address each element separately.

### (a) Existence of a Contract

With respect to the existence of a valid contract, BioTE contends that it produced evidence showing that: (1) pursuant to its confidential settlement agreement with SottoPelle NA, it had exclusive rights over Texas; (2) it is the successor and assignee of SottoPelle NA's independent contractor agreement with Medcalf; and (3) Medcalf continued working with BioTE under the independent contractor agreement and accepted payments pursuant to that agreement from BioTE. Medcalf responds that: (1) he contracted with SottoPelle NA, not BioTE; (2) BioTE did not produce competent summary-judgment evidence showing it is an assignee or successor entity of SottoPelle NA under the terms of BioTE's confidential settlement agreement with SottoPelle NA; and (3) the affidavit of BioTE's chief restructuring officer is entitled to no evidentiary weight because it does not attach the confidential finalized settlement agreement showing it to be a successor or assignee of SottoPelle NA.

Although the parties characterize their arguments as relating to the existence of a contract (element 1), they present three distinct rationales: (1) the existence of a contract; (2) Medcalf's affirmative defense that BioTE lacked the capacity to sue; and (3) the weight that might be ascribed to the chief restructuring officer's affidavit. To the extent the parties argue the confidential finalized settlement agreement is the contract that forms the basis of BioTE's breach-of-contract claim, we reject that

premise. Rather, the contract that gave rise to Medcalf's obligations was the independent contractor agreement.

As to the existence of a contract to support BioTE's breach-of-contract claim (element 1), in his motion for no-evidence summary judgment, Medcalf claimed that: (1) BioTE failed to adduce evidence of a contract between Medcalf and BioTE; and (2) the contracts attached to BioTE's petition are between Medcalf and "nonparty entities," i.e., the independent contractor agreement between SottoPelle NA and Medcalf, and the nondisclosure and non-liability agreement between SottoPelle, Inc. and Medcalf. Medcalf does not dispute the existence of the independent contractor agreement, which was attached to BioTE's petition and his no-evidence motion for summary judgment. Further, in its response to the motion, BioTE attached the affidavit of its chief restructuring officer as testimony that Medcalf signed an independent contractor agreement with SottoPelle NA. Rather, Medcalf disputes the existence of the agreement containing SottoPelle NA's assignment of its rights to BioTE.

We note that Medcalf did not seek traditional summary judgment on his affirmative defense that BioTE lacked the capacity to sue Medcalf for breach of contract;[10] he only sought no-evidence summary judgment with respect to the existence of a contract (element 1) on BioTE's breach-of-contract claim.

---

[10] A party has capacity to sue when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy. *6200 GP, LLC v. Multi Serv. Corp.*, No. 05-16-01491-CV, 2018 WL

In addition, Medcalf argues the chief restructuring officer's affidavit is conclusory because it does not attach the referenced document and it is not the best evidence of the confidential finalized settlement agreement. He maintains that he may raise this argument for the first time on appeal.[11]

In a summary judgment proceeding, sworn or certified copies of all papers or parts thereof referred to in an affidavit must be attached to the affidavit or served with it. TEX. R. CIV. P. 166a(f); *Brown v. Brown*, 145 S.W.3d 745, 752 (Tex. App.—Dallas 2004, pet. denied). An affidavit is substantively defective when the absence of the referenced papers from the summary-judgment evidence makes the affidavit conclusory. *Brown*, 145 S.W.3d at 752.

The best evidence rule provides that the only competent evidence to prove the contents of a document is the document itself. *Aetna Ins. Co. v. Klein*, 325 S.W.2d 376 (Tex. 1959); *White v. Bath*, 825 S.W.2d 227, 231 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Prudential Ins. Co. of America, Inc. v. Black*, 572 S.W.2d 379, 380 (Tex. App.—Houston [14th Dist.] 1978, no writ). However, when the document and its contents are only collaterally related to the issues in the case, the

---

3154594, at *3 (Tex. App.—Dallas June 28, 2018, no pet.) (mem. op.); *Fitness Evolution*, 2015 WL 6750047, at *14. A challenge to a party's privity of contract is a challenge to capacity, which is an affirmative defense. *6200 GP*, 2018 WL 3154594, at *3; *Fitness Evolution*, 2015 WL 6750047, at *14. Privity of contract is established by proving the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff. *6200 GP*, 2018 WL 3154594, at *3.

[11] Defects in the substance of an affidavit may be raised for the first time on appeal. *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied). An affidavit that does not provide the underlying facts to support the conclusion is substantively deficient. *Id.*

–16–

best evidence rule does not apply. *White*, 825 S.W.2d at 231; *Prudential Ins.*, 572 S.W.2d at 380.

BioTE attached the affidavit of its chief restructuring officer to its summary judgment response to show, in part, that: (1) Medcalf signed an independent contractor agreement with SottoPelle NA; (2) when the independent contractor agreement was executed, SottoPelle NA owned 50% of BioTE; (3) SottoPelle NA and BioTE separated pursuant to a confidential finalized settlement agreement that granted BioTE exclusive rights over Texas and made it the successor and assign of SottoPelle NA's independent contractor agreement with Medcalf. BioTE also attached the deposition testimony of Medcalf to show that Medcalf continued working for BioTE under the terms of the independent contractor agreement and BioTE continued to make payments to him pursuant to that agreement. The existence of and terms contained in the confidential finalized settlement agreement go to Medcalf's affirmative defense that BioTE lacked the capacity to sue Medcalf for breach of contract; the confidential finalized settlement agreement is thus collaterally related to the breach-of-contract issue. *See White*, 825 S.W.2d at 231 (when documents and contents only collaterally related to issue, best evidence rule does not apply). Again, we note that Medcalf did not move for traditional summary judgment on his affirmative defense of lack of capacity.

Accordingly, we conclude that BioTE presented more than a scintilla of evidence to show the existence of a contract (element 1) in support of its breach-of-contract claim.

### (b) Damages and Injunction

The parties briefing focuses heavily on the question of the question of the quality of proof with respective to BioTE's proof of the amount of its damages. With respect to that question, BioTE argues the affidavit of its chief restructuring officer establishes a reasonable royalty for the use of its confidential information and, in the alternative, even without proof of actual damages, it sought a permanent injunction prohibiting the continued use and disclosure of its confidential information. Medcalf maintains that BioTE's damages calculation is based on speculation. The question, at this no-evidence summary judgment stage is not so limited, however. Where there is some evidence to support both the existence of the contract and the breach, the claimant may proceed on proof that includes either monetary damages or injunctive remedy. *MW Petroleum v. Exxon,* No. 14-96-00040-CV, 1997 WL 634159, at *4 (Tex. App.—Houston [14th Dist.] Oct. 16, 1997, no pet.) (not deignated for publication).

A plaintiff will not be denied injunctive relief simply because he also pleads for money damages. *See Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 527 S.W.3d 579, 586 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Further, although not conclusive, language in an agreement stating that breach of that agreement will

cause irreparable harm is some evidence of irreparable harm. *See Argo Gr. US, Inc. v. Levinson*, 468 S.W.3d 698, 702 (Tex. App.—San Antonio 2015, no pet.) (concluding language in agreement is some evidence that violation of noncompete may cause irreparable injury); *Poole v. U.S. Money Reserve, Inc.*, No. 09-08-137-CV, 2008 WL 4735602, at *8 (Tex. App.—Beaumont Oct. 30, 2008, no pet.) (mem. op.) (concluding language of agreement is one consideration in analysis when reviewing temporary injunction).

In its petition, BioTE argued in part that the independent contractor agreement prohibited Medcalf from redirecting clients, or taking client lists, pricing and sales information, usurping business opportunities, interfering with existing contracts, and failing to pay management and license fees. BioTE sought to recover actual, consequential, and incidental damages as a result of those injuries. Also, BioTE sought temporary and permanent injunctive relief.

In his no-evidence summary-judgment motion, Medcalf argued, "With respect to damages, BioTE has also failed to adduce any evidence. BioTE's corporate representative testified at his deposition that he has not determined "the total" of any claimed damages as of the date of his deposition, but that he might "do so in the future." Both BioTE's petition and Medcalf's summary-judgment motion attached the independent contractor agreement. Article II of that agreement contains, among other things, an injunctive-relief provision that provides that any injury for breach of the contract will cause irreparable harm as follows:

–19–

II.07 **Injunctive Relief.** Contractors [sic] agrees that if he breaches any portion of this Article II [sic] he will have irreparably harmed the Company and as a result the Company will be entitled to pursue all legal and equitable remedies from a court of competent jurisdiction, including seeking a preliminary and/or permanent injunction barring such breach.

In addition, Article III of the independent contractor agreement provides for remedies and states that "[Medcalf] acknowledges, however, that the remedies at law for any breach by him of the provisions of this [independent contractor agreement] may be inadequate and that [SottoPelle NA] shall be entitled to injunctive relief against him in the event of any breach."

In its response to the no-evidence summary-judgment motion, BioTE referred to the affidavit of BioTE's chief restructuring officer, which stated in part that "[w]ithout [BioTE's] confidential, proprietary, and/or trade secret information, [BioTE's] business would be worth zero." While the affidavit does not attempt to place a sum certain of the difference between zero and BioTE's contractual expectancy as of the date of its execution, this was not necessary. Rather, to survive summary judgment it was necessary to supply a basis on which the jury could rationally ascertain the net amount of damages. *E.g., Dix v. Brooks,* No. 03-04-00408-CV, 2006 WL 903738, at *10–11 (Tex. App.—Austin Apr. 2, 2006, no pet.) (mem. op.).

We conclude the injunctive-relief provisions in the independent contractor agreement, which is contained in the summary judgment record, together with the affidavit of the chief restructuring officer are more than a scintilla of evidence and

–20–

sufficient to raise a fact issue as to the availability of a contract remedy for purposes of a no-evidence motion for summary judgment.

### 3. Conclusion—Breach-of-Contract Claim

We conclude the trial court erred when it granted no-evidence summary judgment on BioTE's breach-of-contract claim. The portion of BioTE's issue related to its breach-of-contract claim is decided in BioTE's favor.

### D. Tort Claims

In the second category of BioTE's issue on appeal, we address whether the trial court erred when it granted no-evidence summary judgment on BioTE's various tort claims for: (1) breach of fiduciary duty (count 2) and misappropriation of corporate opportunities (count 2); (2) tortious interference with existing contracts (count 3); (3) unfair competition by common law misappropriation, unfair competition by trade-secret misappropriation, or both (count 10); and (4) conversion (count 11).

### 1. Breach of Fiduciary Duty (count 2) and Misappropriation of Corporate Opportunities (count 2)

BioTE argues it produced more than a scintilla of evidence to support its claim for breach of fiduciary duty. It contends that Medcalf was an independent contractor working for BioTE and, as a matter of law, was obligated not to divulge BioTE's confidential information. In the alternative, BioTE argues that, even if the independent contractor agreement had not been assigned to BioTE, then Medcalf owed a fiduciary duty to BioTE as a general employee or by virtue of his independent

contractor agreement with SottoPelle NA. Medcalf responds that: (1) a formal fiduciary relationship that arises as a matter of law does not exist between BioTE and Medcalf; (2) BioTE is not a party to the independent contractor agreement, and contractual relationships do not typically create any fiduciary duties; (3) the independent contractor agreement does not create any fiduciary obligations; and (4) the chief restructuring officer testified that Medcalf was never employed by BioTE.

### (a) Applicable Law

Generally, the elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of the duty; (3) causation; and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

A breach-of-fiduciary-duty claim includes, among other elements, a fiduciary relationship between the plaintiff and the defendant. *PlainsCapital Bank v. Reaves*, No. 05-17-001184-CV, 2018 WL 6599020, at *2 (Tex. App.—Dallas Dec. 17, 2018, pet. denied) (mem. op.); *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). Two types of relationships give rise to fiduciary duties: formal and informal. *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (per curiam). Fiduciary duties are owed as a matter of law in formal relationships, which include relationships between partners, principals and agents, and attorneys and clients. *Id.* at 330. An informal fiduciary duty may arise from a moral, social, domestic, or purely personal relationship of trust and confidence, generally called a confidential

–22–

relationship. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998). However, a fiduciary duty will not be created lightly. *Areda v. S-W Transp., Inc.*, 365 S.W.3d 838, 841 (Tex. App.—Dallas 2012, no pet.).

To the extent a claim for misappropriation of a corporate opportunity is a separate claim, its elements are: (1) a corporate officer or director in a fiduciary relationship with the corporation; (2) misappropriates, usurps, or seizes a business opportunity for personal gain; and (3) the business opportunity properly belongs to the corporation. *Ritchie v. Rupe*, 443 S.W.3d 856, 874 n.27 (Tex. 2014); *Icom Sys., Inc. v. Davies*, 990 S.W.2d 408, 410 (Tex. App.—Texarkana 1999, no pet.) (referring to "breach of fiduciary duty by usurping a corporate opportunity" as a "breach of fiduciary duty" claim).

### (b) Application of the Law to the Facts

In its petition, BioTE alleged that Medcalf owed it a fiduciary duty by virtue of the independent contractor agreement and the nondisclosure and non-liability agreement. In his no-evidence motion for summary judgment, Medcalf argued that there was no evidence to support the existence of a fiduciary duty (element 1) for BioTE's breach-of-fiduciary-duty claim (count 2). Medcalf's motion did not address BioTE's claim for misappropriation of corporate opportunities (count 2).[12]

---

[12] To the extent this claim exists separately from the remainder of BioTE's "count 2" claim for breach of fiduciary duty, which is far from clear, we note that Medcalf did not separately address it in his no-evidence motion for summary judgment. The trial court signed a final summary judgment granting that motion. BioTE did not complain of this below and has not presented any argument on appeal to explain why it would exist separate and apart from the breach-of-fiduciary-duty claim or why it would not properly

In its summary-judgment response, BioTE referenced the affidavit of its chief restructuring officer and argued that the evidence shows that Medcalf knew by virtue of the independent contractor agreement that BioTE was disclosing the confidential agreement with him based on the understanding that he would safeguard it. Also, BioTE argued that the law applying to an employee's fiduciary duty to his employer applies to independent contractors.

BioTE alleges it is the successor and assign of the independent contractor agreement, which is the document that established its relationship with Medcalf. That independent contractor agreement defined the parameters of the respective roles of the parties, and BioTE does not direct us to any language in that agreement that creates a fiduciary relationship. If SottoPelle NA and Medcalf had intended to create such a relationship, they could have expressly done so. *See Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 61 (Tex. App.—Houston [14th Dist.] 2015, no pet.). To the extent that BioTE argues Medcalf's access to its confidential information created a fiduciary relationship, it fails to demonstrate how access to confidential information, standing alone, could create such a relationship. Medcalf contractually agreed to keep information confidential, and we decline to impose an additional fiduciary duty on Medcalf based only on his access to BioTE's

---

be disposed of on the existing motion. We therefore conclude any issue or argument as to the propriety of the no-evidence summary judgment on BioTE's claim for misappropriation of corporate opportunities was not preserved for appellate review and has been waived on appeal. *See* TEX. R. APP. P. 33.1.

information. *See id.* at 61 n.6. We conclude BioTE did not raise more than a scintilla of evidence to show the existence of a fiduciary duty owed by Medcalf to BioTE.

## 2. Tortious Interference with an Existing Contract (count 3)

BioTE argues it produced more than a scintilla of evidence to support its claim for tortious interference with an existing contract (count 3). It contends that the summary-judgment evidence showed Dr. Gonzalez contracted with BioTE, Medcalf solicited and induced Dr. Gonzalez to create BioSana, a competing company, using BioTE's confidential information in the process, and that BioTE thus lost revenue as Dr. Gonzalez stopped using BioTE. Medcalf responds that BioTE failed to offer any evidence that Medcalf interfered with an existing contract, it has suffered any injury, or it incurred any damages.

### (a) Applicable Law

The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

### (b) Application of the Law to the Facts

In his no-evidence motion for summary judgment, Medcalf argued there was no evidence to support the elements for tortious interference with an existing contract (count 3) or tortious interference with prospective business relations

(count 3); he challenged all of the elements for both claims. In particular, he claimed only one physician, Vernon Williams, who had contracted with BioTE had been contacted by BioSana and that physician did not contract with BioSana. Further, Medcalf argued that it was BioSana's policy to "stay away from" and not permit physicians who had contracted with BioTE to attend the BioSana training sessions.

With respect to the first element requiring an existing contract subject to interference, BioTE responded that the summary-judgment evidence showed Dr. Gonzalez had entered into a management services and license agreement with BioTE that contained a three-year term, but based on the number of new patients she had attained, the contract automatically renewed each year for a one-year period. The management services and license agreement[13] was between Dr. Gonzalez and SottoPelle Texas and signed on February 2, 2012. It provided that the agreement would be for a period of three years and it would automatically renew each year once Dr. Gonzalez attained over 501 cumulative new patients. The chief restructuring officer stated in his affidavit that event had occurred, so the contract was automatically renewed each year.

With respect to the second element requiring a willful and intentional act of interference with the contract, BioTE maintained the summary-judgment evidence

---

[13] This agreement was attached to BioTE's petition. The affidavit of the chief restricting officer attached to BioTE's summary-judgment response incorporated the management services and license agreement into the summary-judgment evidence by reference.

showed that Medcalf approached Dr. Gonzalez about creating BioSana and induced her to breach her contract with BioTE by providing her with a false attorney-opinion letter stating that her contract with BioTE had terminated. Attached to the summary-judgment response was the deposition testimony of Dyan Warrenburg stating that she and Medcalf first met with Dr. Gonzalez about BioSana in October 2017, when BioSana finally formed, Dr. Gonzalez was "already on board," and, although she did not contribute money, Dr. Gonzalez was providing her medical expertise and her facility as a training location. Also, attached was an email dated January 18, 2018, from Medcalf to a representative of a pharmacy, stating that Dr. Gonzalez was BioSana's first client and wanted to place her first order for March 1, 2018. In addition, BioTE attached an email dated March 5, 2018, with the subject line "Bernice Gonzalez, MD Sot[t]o[P]elle Contract," from an attorney and copying Dr. Gonzalez and Medcalf that advised the contract was for a period of three years, it did not allow for any automatic renewal options, any renewals had to be in writing, there were no issues with Dr. Gonzalez "moving forward," and the non-compete agreement was for two years from the termination of the agreement so it was not an issue unless there was a written renewal.

As to the requirement that Medcalf proximately caused the plaintiff's injury (element 3), BioTE referenced the affidavit of its chief restructuring officer to show that Dr. Gonzalez continued to operate under her contract with BioTE until April 2018 and, prior to the formation of BioSana, Dr. Gonzalez had renewed her contract

with BioTE for the previous three years. He stated that beginning in March 2016, Dr. Gonzalez reported between 200–225 bio-identical hormone replacement pellet procures per month, but she reported 179 in March 2018, 73 in April 2018, and zero in May 2018.

In addition, with respect to the requirement that Medcalf caused BioTE actual damages or loss (element 4), the affidavit of BioTE's chief restructuring officer states that, pursuant to the terms of the management services and license agreement, Dr. Gonzalez was obligated to pay BioTE for every procedure she performs. And, beginning in March 2016, she reported approximately 200–225 bio-identical hormone replacement pellet procedures per month, resulting in an average of $40,000–$60,000 in fees. As a result, he stated that BioTE earned approximately $400,000–$600,000 annually from its contract with Dr. Gonzalez.

We conclude BioTE raised more than a scintilla of evidence on its tortious-interference-with-an-existing-contract claim (count 3).[14] Accordingly, the trial court erred when it granted Medcalf's no-evidence summary judgment on that claim. The portion of BioTE's issue relating to its tortious-interference-with-an-existing-contract claim (count 3) is decided in BioTE's favor.

---

[14] We note that BioTE complains only that the trial court erred when it granted no-evidence summary judgment on its claim for tortious interference with an existing contract (count 3); on appeal, the parties do not address BioTE's claim for tortious interference with prospective business relations (count 3). Accordingly, we do not address whether the trial court erred in granting no-evidence summary judgment on BioTE's claim for tortious interference with prospective business relations (count 3). *See Ontiveros v. Flores*, 218 S.W.3d 70,71 (Tex. 2007) (per curiam).

### 3. Unfair Competition by Common Law Misappropriation, Unfair Competition by Trade-Secret Misapporpriation, or Both (count 10)

BioTE argues it produced more than a scintilla of evidence to support a claim for unfair competition by trade-secret misappropriation. BioTE contends that the summary-judgment evidence established it had trade secrets that gave it a competitive advantage, Medcalf received its trade-secret information by virtue of his role as a liaison and admitted to receiving the trade-secret information during his deposition, he used that information to create BioSana, and BioTE suffered damages as a result of Medcalf's using its trade-secret information. Medcalf responds that he did not acquire any information by improper means, there is no evidence he used any of BioTE's trade-secret information because BioTE is not the owner of the alleged trade secrets, and there is no evidence BioTE took reasonable measures to protect any trade-secret information.

### (a) Applicable Law

Texas common law recognizes three types of unfair competition claims: palming off, trade-secret misappropriation, and common-law misappropriation. *See* James E. Hudson, III, *A Survey of the Texas Unfair-Competition Tort of Common-Law Misappropriation*, 50 BAYLOR L. REV. 921, 924–26 (1989).

The elements of "unfair competition by trade-secret misappropriation" are:

(1) the existence of a trade secret;

(2) the breach of a confidential relationship or the improper discovery of a trade secret;

(3) the use of the trade secret without the plaintiff's authorization; and

(4) the award of appropriate damages.

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300

S.W.3d 348, 366–67 (Tex. App.—Dallas 2009, pet. denied); *see also* Hudson, 50

BAYLOR L. REV. at 926–28.

> The elements of "unfair competition by common-law misappropriation" are:
>
> (1) the creation of the plaintiff's product through extensive time, labor, skill, and money;
>
> (2) the defendant's use of that product in competition with the plaintiff because the defendant is burdened with little or none of the expense incurred by the plaintiff; and
>
> (3) commercial damage to the plaintiff.

*KBDIC Invs., LLC v. Zuru Toys Inc.*, No. 05-19-001590-CV, 2020 WL 5988014, at

*5 n.4 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op.); *see also* Hudson,

50 BAYLOR L. REV. at 928.

Two significant differences exist between the elements of trade-secret

misappropriation and common-law misappropriation: (1) trade-secret

misappropriation requires the existence of a trade secret; and (2) common-law

misappropriation requires no secrecy but requires the use of the misappropriated

item in competition with its creator. *KBDIC Invs.*, 2020 WL 5988014, at *5 n.4; *see*

*also* Hudson, 50 BAYLOR L. REV. at 929–30. BioTE pleaded broadly a claim that

could fit either:

> BioTE has created confidential information concerning its product, pricing, marketing, sales techniques, customer information, and

customer histories through extensive time, labor, skill[,] and money. [Medcalf] ha[s] unlawfully used this information in competition with BioTE, thereby gaining a special advantage in that competition because [Medcalf] [was] burdened with little or none of the time and expense incurred by BioTE.

*See KBDIC Invs.*, 2020 WL 5988014, at *5 n.4 (listing elements of unfair competition by common law misappropriation). We construe this pleading as sufficient to allege either form of misappropriation. *Roark v. Allen,* 633 S.W.2d 804, 809-10 (Tex. 1982).

### (b) Application of the Law to the Facts

In his no-evidence motion for summary judgment, Medcalf sought summary judgment on BioTE's claim for "unfair competition through misappropriation," listed the elements for unfair competition by trade-secret misappropriation, and argued that "[t]here is no evidence of elements 1, 2, 3, and 4 in this case. [BioTE] has not shown what it is that constitutes a trade secret, and there is no evidence that [Medcalf] has used any [BioTE] trade secret." In response, BioTE stated "[Medcalf] has only challenged [BioTE's] claim for trade-secret misappropriation" and pointed to summary-judgment evidence in support of that cause of action. We pretermit the question of whether the no-evidence motion properly framed the question in view of the evidence submitted in response to Medcalf's trade-secret challenge included the Hincher declaration that detailed, for purposes minimally sufficient to survive a no-evidence summary judgment, some evidence of each of those four elements. It likewise detailed, the alleged misuse of the information in competition with BioTE,

which would be the only additional element necessary to pursue a common-law theory. This is sufficient for purposes of responding to a no-evidence motion for summary judgment.[15]

### 4. Conversion (count 11)

BioTE argues that, in Medcalf's no-evidence motion for summary judgment, he failed to challenge the separate and distinct elements of BioTE's claim for conversion (count 11). Medcalf responds that this cause of action is a derivative claim that falls under the umbrella of unfair competition by trade-secret misappropriation and, as a result, BioTE's conversion claim (count 7) relies on the alleged existence of proprietary, confidential, or trade-secret information. Also, on appeal, he argues that BioTE's claim for conversion (count 7) shares a common element with unfair competition by trade-secret misappropriation, that is misappropriation, and there can be no misappropriation if Medcalf did not breach a confidential relationship with BioTE or acquire that information by improper means.

### (a) Applicable Law

To establish a claim for conversion, a plaintiff must prove: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant, unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's

---

[15] We express no opinion with respect to whether the evidence would suffice to defeat a traditional summary judgment motion.

rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property. *Guillory v. Dietrich*, 598 S.W.3d 284, 292 (Tex. App.—Dallas 2020, pet. denied).

### (b) Application of the Law to the Facts

In its original petition, BioTE alleged a claim for conversion (count 11) claiming Medcalf maliciously converted and assumed dominion over its property and sought actual and exemplary damages. In his no-evidence motion for summary judgment, Medcalf did not list the elements of this cause of action or specify which elements he contended there was no evidence to support. As a result, Medcalf's motion is insufficient as a matter of law to support no-evidence summary judgment on BioTE's conversion claim (count 11). *See Hansen*, 525 S.W.3d at 695–96; *see also Douglas*, 2022 WL 1955682 at \*4.

Further, we note that Medcalf asserted in his no-evidence motion for summary judgment and on appeal that BioTE's claim for conversion (count 11) was a derivative claim dependent on its claim for unfair competition by trade-secret misappropriation. But BioTE's claim for conversion is not dependent on the claim for unfair competition by trade-secret misappropriation.

Accordingly, we conclude the trial court erred when it granted no-evidence summary judgment on BioTE's claim for conversion (count 7). The portion of BioTE's issue relating to its conversion claim (count 7) is decided in BioTE's favor.

### *E. Statutory Claims—Violations of the Texas Theft Liability Act (count 6) and Misappropriation of Trade Secrets Under the Texas Uniform Trade Secrets Act (count 9)*

In the third category addressing BioTE's issue on appeal, we address whether the trial court erred when it granted no-evidence summary judgment on BioTE's statutory claims for: (1) violations of the Texas Theft Liability Act (count 6); and (2) misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (count 9). BioTE argues that Medcalf failed to challenge the separate and distinct elements of these statutory claims. Medcalf responds that these causes of action are derivative claims that fall under the umbrella of unfair competition by trade-secret misappropriation and, as a result, BioTE's statutory claims rely on the alleged existence of proprietary, confidential, or trade-secret information. And, on appeal, Medcalf argues that, because there was no evidence of misappropriation as to the claim for unfair competition by trade-secret misappropriation, then there is no evidence a trade secret was stolen.

### (1) Applicable Law

The Texas Theft Liability Act permits a civil cause of action for damages against a party who commits theft via any of the numerous methods defined under the Texas Penal Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.003 (creating civil claim for "theft"); TEX. PENAL CODE ANN. §§ 31.03, 31.04, 31.06, 31.07, 31.11–31.14 (defining "theft"). The elements of misappropriation of trade secrets under the Texas Uniform Trade Secrets Act are: (1) ownership of a trade secret; (2)

misappropriation of the trade secret; and (3) an injury, if the plaintiff is seeking damages. CIV. PRAC. & REM. §§ 134A.002(1), (3), (6), 134A.004(a).

## (2) Application of the Law to the Facts

In its original petition, BioTE alleged claims for violations of the Texas Theft Liability Act (count 6) and misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (count 9). In his no-evidence motion for summary judgment, Medcalf did not list the elements for these statutory causes of action or specify which elements he contended there was no evidence to support. As a result, Medcalf's motion is insufficient as a matter of law to support no-evidence summary judgment on BioTE's claims for violations of the Texas Theft Liability Act (count 6) and misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (count 9). *See Hansen*, 525 S.W.3d at 695–96; *see also Douglas*, 2022 WL 1955682 at *4.

We conclude the trial court erred when it granted no-evidence summary judgment on BioTE's statutory claims. The portion of BioTE's issue relating to its statutory claims for violations of the Texas Theft Liability Act (count 6) and misappropriation of Trade Secrets Under the Texas Uniform Trade Secrets Act (count 9) is decided in BioTE's favor.

### F. Derivative Claims—Conspiracy Claims (counts 2, 4, 5, and 13) and Aiding and Abetting Breach of Fiduciary Duty (count 8)

In the fourth category addressing BioTE's issue on appeal, we address whether the trial court erred when it granted no-evidence summary judgment on

BioTE's derivative claims for conspiracy—conspiracy to solicit others to breach a fiduciary duty (count 2), conspiracy to solicit others to misappropriate corporate opportunities (count 2), conspiracy to commit unfair competition by common-law misappropriation (count 4), civil conspiracy (count 5), and conspiracy to violate the Texas Theft Liability Act (count 13)—and aiding and abetting breach of fiduciary duty (count 8). BioTE argues that, in Medcalf's no-evidence motion for summary judgment, he failed to challenge the separate and distinct elements of BioTE's claims for conspiracy and aiding and abetting breach of fiduciary duty. Medcalf responds that these causes of action are derivative claims that fall under the umbrella of unfair competition by trade-secret misappropriation and, as a result, BioTE's derivative claims rely on the alleged existence of proprietary, confidential, or trade-secret information.

### 1. Applicable Law

A civil conspiracy involves a combination of two or more persons with an unlawful purpose or a lawful purpose to be accomplished by unlawful means. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 538 (Tex. 2001). Civil conspiracy is a derivative tort that depends on an underlying tort or other illegal act. *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019).

The Texas Supreme Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting, and the Fifth Circuit has stated that no such claim exists in Texas. *First United Pentecostal*, 514 S.W.3d at 224; *In*

–36–

*re Deputy Orthopaedics, Inc.*, 888 F.3d 753, 782 (5th Cir. 2018); *see also Hill v. Keliher*, No. 05-20-00644-CV, 2022 WL 213978, at *10 (Tex. App.—Dallas Jan. 25, 2022, pet. denied) (mem. op.). But to the extent such a claim exists under Texas law, aiding and abetting, like civil conspiracy, is a derivative claim that is premised on an underlying tort. *Hill*, 2022 WL 213978, at *10.

### 2. Application of the Law to the Facts

In his motion for no-evidence summary judgment, Medcalf did not list the elements of BioTE's conspiracy and aiding and abetting claims or specify which elements he contended there was no evidence to support. As a result, Medcalf's motion is insufficient as a matter of law to support no-evidence summary judgment on BioTE's claims for conspiracy—conspiracy to solicit others to breach a fiduciary duty (count 2), conspiracy to solicit others to misappropriate corporate opportunities (count 2), conspiracy to commit unfair competition by common-law misappropriation (count 4), civil conspiracy (count 5), and conspiracy to violate the Texas Theft Liability Act (count 13)—and aiding and abetting breach of fiduciary duty (count 8). *See Hansen*, 525 S.W.3d at 695–96; *see also Douglas*, 2022 WL 1955682 at *4.

We conclude the trial court erred when it granted no-evidence summary judgment on BioTE's claims for conspiracy and aiding and abetting.

### G. Declaratory Judgment Action (count 7)

In the fifth category addressing BioTE's issue on appeal, we address whether the trial court erred when it granted no-evidence summary judgment on BioTE's declaratory judgment action. BioTE argues Medcalf failed to challenge the separate and distinct elements of BioTE's declaratory judgment action (count 7) in his no-evidence summary-judgment motion. Medcalf responds that this cause of action is a derivative claim that falls under the umbrella of unfair competition by trade-secret misappropriation and, as a result, BioTE's declaratory judgment action relies on the alleged existence of proprietary, confidential, or trade-secret information. On appeal, he also argues BioTE's declaratory judgment action is redundant.

### 1. Applicable Law

The Uniform Declaratory Judgments Act is a remedial statute designed "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." CIV. PRAC. & REM. § 37.002(b); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). A person interested under a written contract or whose rights, status, or other legal relations are affected by a statute or contract may have determined any question of construction or validity arising in the statute or contract and obtain a declaration of rights, status, or other legal relations thereunder. *See* CIV. PRAC. & REM. § 37.004(a). A contract may be construed either before or after there has been a breach. *Id.* § 37.004(b). However, as a general rule, a declaratory judgment action will not lie if there is a pending action between the

–38–

parties which might resolve the exact issues raised in the declaratory judgment. *See Tex. Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970).

## 2. Application of the Law to the Facts

In his no-evidence motion for summary judgment, Medcalf did not list the elements of BioTE's declaratory judgment action or specify which elements he contended there was no evidence to support. As a result, Medcalf's motion is insufficient as a matter of law to support no-evidence summary judgment on BioTE's declaratory judgment action (count 7). *See Hansen*, 525 S.W.3d at 695–96; *see also Douglas*, 2022 WL 1955682 at *4.

We conclude the trial court erred when it granted no-evidence summary judgment on BioTE's declaratory judgment action. The portion of BioTE's issue that relates to its declaratory judgment action (count 7) is decided in BioTE's favor.

### H. Equitable Remedies—Constructive Trust and Accounting (count 14)

In the sixth category addressing BioTE's issue on appeal, we address whether the trial court erred when it granted no-evidence summary judgment on BioTE's equitable remedies of a constructive trust (count 14) and an accounting (count 14). BioTE argues that, in Medcalf's no-evidence motion for summary judgment, he failed to challenge the separate and distinct elements of BioTE's equitable remedies. Medcalf concedes that these are not causes of action, but remedies.

–39–

## 1. Applicable Law

A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015). The party requesting a constructive trust must establish the following: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property. *Id.* Because a constructive trust is a remedy, not a separate cause of action, it is not an independent basis for jurisdiction; it is derivative. *See Heyer v. Groenke*, No. 05-16-00054-CV, 2017 WL 3474011, at *4 (Tex. App.— Dallas Aug. 14, 2017, no pet.) (mem. op.); *Woodard v. AFI, S.A.*, No. 05-94-01498-CV, 1995 WL 464252, at *12 (Tex. App.—Dallas July 31, 1995, no writ) (not designated for publication).

A request for an accounting may be an equitable remedy sought in conjunction with another cause of action or it may be a suit in equity. *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 674 (Tex. App.—Houston [14th Dist.] 2016, no pet.). An accounting is a flexible, equitable remedy that may apply in various scenarios according to the sound discretion of the trial court. *Sw. Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied). An equitable accounting is proper when the facts and accounts presented are so complex that adequate relief may not be obtained at law. *Hutchings v. Chevron U.S.A., Inc.*, 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993, writ denied).

## 2. Application of the Law to the Facts

In its original petition, BioTE sought the equitable remedies of: (1) a constructive trust (count 14) based on its (a) breach-of-fiduciary-duty claim (count 2), (b) unfair competition by common law misappropriation claim (count 10), and (c) statutory claim for misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (count 9); and (2) an accounting (count 14) based on its claims for (a) violations of the Texas Theft Liability Act (count 6) and (b) conversion (count 11). Medcalf sought no-evidence summary judgment on BioTE's equitable remedies of a constructive trust (count 14) and an accounting (count 14), arguing they were derivative claims that fall under the umbrella of unfair competition by trade-secret misappropriation and, as a result, they rely on the alleged existence of proprietary, confidential, or trade-secret information.

We have already concluded the trial court did not err when it granted no-evidence summary judgment on BioTE's claim for breach of fiduciary duty (count 2). As a result, to the extent BioTE's request for a constructive trust (count 14) is based on that claim, we conclude the trial court did not err when it granted no-evidence summary as to that equitable remedy.

However, we have concluded the trial court erred to the extent it granted no-evidence summary judgment with respect to BioTE's claims for statutory misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (count 9), violations of the Texas Theft Liability Act (count 6), unfair competition

by common law misappropriation, unfair competition by trade-secret misappropriation, or both (count 10), and conversion (count 11). To the extent BioTE's requests for a constructive trust and an accounting are based on those claims, it would be premature to determine summary judgment on these equitable remedies before the claims have been resolved. Because the underlying claims have not been resolved, it cannot be determined whether a constructive trust or an accounting would be an appropriate equitable remedy. *See Shields v. Ameriquest Mortg. Co.*, No. 05-06-01647-CV, 2007 WL 3317533, at *2 (Tex. App.—Dallas Nov. 9, 2007, no pet.) (mem. op.) (concluding that because summary judgment should not have granted on claims, it should not have been granted on requests for relief). Accordingly, we conclude the trial court erred when it granted no-evidence summary judgment on BioTE's request for the equitable relief of a constructive trust (count 14) and an accounting (count 14) as those remedies relate to BioTE's claims for statutory misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (count 9), violations of the Texas Theft Liability Act (count 6), unfair competition by common law misappropriation, unfair competition by trade-secret misappropriation, or both (count 10), and conversion (count 11).

The portion of BioTE's issue relating to its request for a constructive trust (count 14) and an accounting (count 14) is decided against it, in part, and in its favor, in part.

## III. CONCLUSION

For the foregoing reasons, the trial court's order granting no-evidence summary judgment is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

PER CURIAM

200661F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BIOTE MEDICAL, LLC, Appellant

No. 05-20-00661-CV          V.

LARRY MEDCALF, Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-07410. Opinion delivered Per Curiam. Justices Schenck and Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** that portion of the trial court's judgment to the extent it granted no-evidence summary judgment on the following claims: breach of contract (count 1); tortious interference with an existing contract (count 3); civil conspiracy to commit tortious interference with an existing contract (count 5); civil conspiracy to commit statutory misappropriation of trade secret under the Texas Uniform Trade Secrets Act (count 5); civil conspiracy to commit violations of the Texas Theft Liability Act (counts 5 and 13); civil conspiracy to commit conversion (count 5); violations of the Texas Theft Liability Act (count 6); declaratory judgment action (count 7); statutory misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (count 9); conversion (count 11); constructive trust (count 14) as to the claim for statutory misappropriation of trade secrets under the Texas Uniform Trade Secrets Act; and an accounting (count 14) as to the claims for violations of the Texas Theft Liability Act and conversion.

In all other respects, the trial court's judgment is **AFFIRMED**.

We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered December 30, 2022.